IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Criminal Action No. 20-56 MN |
| ) | |
| ADRIAN WOOD, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

Christopher R. Howland, Assistant United States Attorney, United States Department of Justice, Wilmington, Delaware.  Attorney for Plaintiff.

Janet Bateman, Assistant Federal Public Defender, District of Delaware.  Attorney for Defendant.

July 20, 2021
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE:**

Before the Court are Defendant Adrian Wood's two motions (D.I. 22, 25) to dismiss the Indictment (D.I. 14) charging Defendant with violation of 18 U.S.C. § 231(a)(3). The motions are filed pursuant to Rule 12(b) of the Federal Rules of Criminal Procedure, asserting selective prosecution, that the Indictment fails to state a valid offense, and that 18 U.S.C. § 231(a)(3) is unconstitutional. For the reasons set forth below, this Court DENIES both of Defendant's motions.

**I.    FACTUAL BACKGROUND**

The essential facts are not in dispute. On May 25, 2020, George Floyd died while in the custody of the Minneapolis Police Department. As a result, protests were held around the country. One such protest was held in Wilmington, Delaware on May 30, 2020. Defendant participated in the Wilmington protest, which began around 2:00 p.m. near Rodney Square. The protestors split into two groups at around 3:30 p.m., with one group remaining near Rodney Square and the second group moving toward Trolley Square. Defendant was in the second group.

At around 7:00 p.m., several protestors in the second group began to throw rocks at a police vehicle driven by Sergeant Evans of the Wilmington Police Department ("WPD"). Sergeant Evans saw Defendant throw a brick that shattered the back window of his police vehicle. Sergeant Evans described the Defendant to assisting officers but pulled away from the group to prevent further escalation of violence.

Defendant was arrested around 11:00 p.m. by a different WPD officer. This officer recognized Defendant based on Sergeant Evans' earlier description. Thereafter, Sergeant Evans positively identified Defendant as the individual who shattered his back window. Defendant was released the night of his arrest because of computer problems at the WPD station but was told to

1

return the following day.  When he returned, Defendant agreed to an interview with the FBI, during which he admitted to throwing the brick.

## II.     PROCEDURAL BACKGROUND

Defendant was charged on June 1, 2020 by the State of Delaware with two felonies and several misdemeanors.  On June 8, 2020, the United States lodged a criminal complaint in federal court charging Defendant with one count of Civil Disorder in violation of 18 U.S.C. § 231(a)(3). The United States did not seek to detain Defendant.  Delaware dismissed the state charges against Defendant on July 8, 2020.  The Grand Jury for the District of Delaware indicted Defendant on September 10, 2020 on the Civil Disorder charge.  The Indictment in its entirety states as follows:

> On or about May 30, 2020, in the District of Delaware, the defendant, ADRIAN WOOD, did knowingly commit an act to obstruct, impede, and interfere with a law enforcement officer lawfully engaged in the lawful performance of the officer's official duties incident to and during the commission of a civil disorder, which obstructed, delayed, and adversely affected commerce and the movement of articles or commodities in commerce, namely: the defendant, ADRIAN WOOD, incident to and during the commission of a civil disorder, knowingly and willfully caused damage to a police officer's police vehicle by throwing a hard projectile through the back window of the vehicle while the police officer was engaged in the lawful performance of official duties.

In violation of 18 U.S.C. § 231(a)(3).

(D.I. 14).

Defendant filed his *Motion to Dismiss for Selective Prosecution* (D.I. 22) on January 21, 2021, claiming selective prosecution based on an asserted "contrast between the treatment of multi-racial crowds protesting largely peacefully against racism in the criminal justice system and the treatment of a mostly white crowd violently storming the Capitol to overturn a peaceful democratic election." (D.I. 22 at 11).  Defendant subsequently filed his *Motion to Dismiss Indictment* (D.I. 25) on January 28, 2021, challenging the constitutionality of 18 U.S.C. § 231(a)(3)

and asserting that the Indictment suffers defects that require dismissal. Specifically, Defendant argues that § 231(a)(3) exceeds Congress's powers under the Commerce Clause. Additionally, Defendant argues that § 231(a)(3) is a content-based restriction on expression that fails strict scrutiny, and thereby violates the First Amendment. Defendant also argues § 231(a)(3) violates the Fifth Amendment's Due Process Clause because it is unconstitutionally vague. Finally, Defendant argues that the boilerplate allegations in the Indictment violate the presentment and notice functions of the grand jury indictment under the Fifth and Sixth Amendments as well as Rule 7(c) of the Federal Rules of Criminal Procedure.

The United States filed an *Omnibus Response to Defendant's Motions to Dismiss* (D.I. 28) on March 29, 2021. The United States argues that the Indictment is sufficient and further argues that Defendant fails to carry his burden to show that § 231(a)(3) is unconstitutional on any of the theories proffered. Defendant filed a *Reply to Government's Omnibus Response to Defendant's Motions to Dismiss* (D.I. 31) on May 12, 2021 maintaining the assertions as to the unconstitutionality of 18 U.S.C. § 231(a)(3) and the insufficiency of the Indictment.

### III. DISCUSSION

#### A. Selective Prosecution

"A selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." *United States. v. Armstrong*, 517 U.S. 456, 463 (1996). The standard to prove selective prosecution is a "demanding one" as such a claim "asks a court to exercise judicial power over a 'special province' of the Executive." *Id.* at 464 (citing *Heckler v. Chaney*, 470 U.S. 821, 832 (1985)). The Attorney General and the United States Attorneys retain broad discretion to enforce criminal laws. *Id.* (citing *Wayte v. United States*, 470 U.S. 598, 607 (1985)). "In the

absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." *Id.* The decision to prosecute rests entirely in the prosecutor's discretion so long as there exists probable cause to believe that the accused committed the offense. *Id.*

To demonstrate selective prosecution, a defendant must show that the federal prosecutorial policy was "motivated by a discriminatory purpose" and had a "discriminatory effect." *Id.* at 465. The defendant "must establish each of these elements with clear evidence sufficient to overcome the presumption of regularity that attaches to decisions to prosecute." *United States v. Taylor*, 686 F.3d 182, 197 (3d Cir. 2012) (internal quotations and citation omitted). The defendant bears the burden to make a "credible showing" that "persons similarly situated have not been prosecuted" and that "the decision to prosecute was made on the basis of an unjustifiable standard, such as race, religion, or some arbitrary factor." *United States v. Schoolcraft*, 879 F.2d 64, 68 (3d Cir. 1989).

Compelling discovery in aid of a claim of selective prosecution requires a "correspondingly rigorous standard." *Armstrong*, 517 U.S. at 468. To compel discovery, the defendant must provide "some evidence tending to show the existence of the essential elements of the defense, discriminatory effect and discriminatory intent." *Taylor*, 686 F.3d at 197 (quoting *United States v. Hedaithy*, 392 F.3d 580, 607 (3d Cir. 2004)).

1. Discriminatory Intent

Defendant asserts that the United States' decision to prosecute him was based on his participation in protected First Amendment activity, namely, protesting. (D.I. 22 at 4). Defendant recounts statements made by former-President Donald Trump and former-Attorney General William Barr to bolster his claim. (*Id.* at 4-5). What Defendant fails to do, however, is demonstrate how these broad statements by public officials relate to the decision to prosecute him. With respect to a claim of selective prosecution, this Court is skeptical of the weight of any evidence that does

4

not involve the decisionmakers directly involved in the defendant's case. Indeed, if the standard required for selective prosecution is to be demanding, it cannot be satisfied by statements tangentially related to Defendant made by public officials not directly involved in the decision to prosecute. Furthermore, as the United States notes in its response, the statements by former-Attorney General Barr proffered by Defendant were made months after Defendant's alleged conduct and *after* the grand jury returned its indictment.

Defendant also argues that because "[t]he State of Delaware has the interest, ability, and willingness to prosecute this case and impose an appropriate sentence if [Defendant] is convicted," that is evidence of discriminatory intent of the United States in prosecuting him. (D.I. 22 at 13). Although Delaware may have the interest, ability, and willingness to prosecute Defendant for his conduct, so does the United States. Defendant fails to cite any authority indicating that the availability of a prosecution by a state would make a federal decision to prosecute improper.

Moreover, by asserting that the United States is prosecuting him because of his participation in "protected First Amendment activity," Defendant overlooks the violent conduct that led to the prosecution. (D.I. 22 at 4). The facts of the case are not in dispute and, to this Court, presented the United States with probable cause to believe that Defendant had committed the offense. This left the decision to prosecute entirely within the prosecutor's discretion. This Court agrees with the United States when it says that "the record establishes that the government properly exercised its discretion to prosecute Defendant after considering the totality of his conduct." (D.I. 28 at 38). Thus, Defendant's evidence of discriminatory intent fails to meet the demanding standard required to have the Indictment dismissed or to compel discovery on the matter.

        2.        <u>Discriminatory Effect</u>

To establish discriminatory effect, the defendant must show that similarly situated persons could have been but were not prosecuted. *Taylor*, 686 F.3d at 197. "Persons are similarly situated under the Equal Protection Clause when they are alike 'in all relevant aspects.'" *Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008) (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)).

Here, with respect to discriminatory effect, Defendant relies on a high-level account of the January 6, 2021 riot at the United States Capitol and the subsequent federal response to those involved in the riot. In doing so, however, Defendant fails to point to a similarly situated person who engaged in similar activity but was not prosecuted. (D.I. 28 at 39).

Moreover, Defendant misstates what is required for a credible showing of discriminatory effect when he lists examples of charges brought against those involved in the riot at the Capitol on January 6th. Defendant argues that most of the Capitol rioters charged were charged with misdemeanors – not a violation of 18 U.S.C. § 231(a)(3). The examples set forth by Defendant, however, fail to show how these individuals are similarly situated or engaged in similar conduct to Defendant but were not charged under the same statute. Furthermore, that scores of the Capitol rioters have since been charged with violation of § 231(a)(3) belies the selective prosecution claim based on the analogy the Defendant draws between his actions and the Capitol riot. Like the arguments regarding discriminatory intent, Defendant's arguments of discriminatory effect do not meet the demanding standard selective prosecution claims demand.

In sum, Defendant has failed to make a credible showing of "the existence of the essential elements of" selective prosecution. *Taylor*, 686 F.3d at 197. Defendant's claim of selective

prosecution therefore fails, and his motion to dismiss the indictment and to compel additional discovery is denied.

### B. Constitutionality of 18 U.S.C. § 231(a)(3)

Defendant challenges the constitutionality of 18 U.S.C. § 231(a)(3) on multiple grounds. This statute has passed constitutional muster in numerous challenges over more than five decades, most recently in *United States v. Pugh*, No. 1:20-CR-73-TFM (S.D. Ala. May 13, 2021).[1] This Court agrees with the reasoning in *Pugh* and for the reasons set forth below, rejects Defendant's arguments that § 231(a)(3) is unconstitutional.

As a preliminary matter, Defendant references the legislative history of § 231(a)(3) and outlines racial motivations underlying specific representatives' support for the statute when it was enacted. This Court, however, must begin its analysis with the language of the statute, not the legislative history. Indeed, "where the statutory language provides a clear answer, [the Court's analysis] ends there as well." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999) (internal citation omitted); *see also Biskupski v. Att'y Gen. of U.S.*, 503 F.3d 274, 280 (3d Cir. 2007) ("This is so because our role is to give effect to the will of Congress, and where its will has been expressed in reasonably plain terms, that language must ordinarily be regarded as conclusive." (internal quotations and citation omitted)).

The language of the statute at issue here states:

> Whoever commits or attempts to commit any act to obstruct, impede, or interfere with any fireman or law enforcement officer lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function – Shall

---

[1] The challenge in *Pugh* was virtually identical to the challenge here.

7

> be fined under this title or imprisoned not more than five years, or both.

18 U.S.C. § 231(a)(3). "Civil disorder" is defined as "any public disturbance involving acts of violence by assemblages of three or more persons, which causes an immediate danger of or results in damage or injury to the property or person of any other individual." 18 U.S.C. § 232(1). "Commerce" is defined as "commerce (A) between any State or the District of Columbia and any place outside thereof; (B) between points within any State or the District of Columbia, but through any place outside thereof; or (C) wholly within the District of Columbia." 18 U.S.C. § 232(2).

> The term "federally protected function" means any function, operation, or action carried out, under the laws of the United States, by any department, agency, or instrumentality of the United States or by any officer or employee thereof; and such term shall specifically include, but not be limited to, the collection and distribution of the United States mails.

18 U.S.C. § 232(3).

> The term "law enforcement officer" means any officer or employee of the United States, any State, any political subdivision of a State, or the District of Columbia, while engaged in the enforcement or prosecution of any of the criminal laws of the United States, a State, any political subdivision of a State, or the District of Columbia; and such term shall specifically include members of the National Guard (as defined in section 101 of title 10), members of the organized militia of any State, or territory of the United States, the Commonwealth of Puerto Rico, or the District of Columbia not included within the National Guard (as defined in section 101 of title 10), and members of the Armed Forces of the United States, while engaged in suppressing acts of violence or restoring law and order during a civil disorder.

18 U.S.C. § 232(7).

This Court, like the court in *Pugh*, does not find the language or definitions of the statute to be impermissibly vague. Although the statute is broad, it is clear. Consequently, this Court will not address the legislative history arguments raised by Defendant. *See Bostock v. Clayton Cty.*, --

8

U.S. --, 140 S. Ct. 1731, 1749 (2020) (noting that legislative history is not considered if there is no ambiguity about how the law applies to the facts before the court).

        1.        Commerce Clause

Under the Commerce Clause, "Congress shall have Power . . . [t]o regulate Commerce . . . among the several States." U.S. CONST. art. I, § 8, cl. 3. Defendant argues that "§ 231(a)(3) unconstitutionally exceeds Congress's authority and intrudes into the States' primary role in general law enforcement because it broadly applies to purely local conduct and requires only an attenuated connection to interstate commerce." (D.I. 25 at 19). Defendant's argument relies on *United States v. Morrison*, 529 U.S. 598 (2000) and *United States v. Lopez*, 514 U.S. 549 (1995). *Lopez* outlined three categories of activity that Congress may regulate under the Commerce Clause: (1) channels of interstate commerce; (2) instrumentalities of interstate commerce, or persons or things in interstate commerce; and (3) activities that substantially affect interstate commerce. *Lopez*, 514 U.S. at 558-59. *Morrison* provided clarity to the third *Lopez* category by identifying four factors courts should consider to determine if a regulated activity "substantially affects" interstate commerce: (1) whether Congress made findings regarding the regulated activity's impact on interstate commerce; (2) whether the statute contains an "express jurisdictional element" that limits its reach; (3) whether the regulated activity is commercial or economic in nature; and (4) whether the link between the prohibited activity and the effect on interstate commerce is attenuated. *Morrison*, 529 U.S. at 610-12. The Supreme Court has also more recently held that activities "substantially affecting" interstate commerce "may be regulated so long as they substantially affect interstate commerce in the aggregate, even if their individual impact on interstate commerce is minimal." *Taylor v. United States*, --- U.S. ---, 136 S. Ct. 2074, 2079 (2016).

Defendant argues that the jurisdictional element, *i.e.,* "which in any way or degree obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce" is insufficient. (D.I. 25 at 15). The Court disagrees. As *Pugh* summarized, "courts have held that despite *Lopez* and *Morrison*, the Government need only show a minimal effect on interstate commerce when the statute contains an explicit jurisdictional element." *Pugh*, No. 1:20-CR-73-TFM, at *9;[2] *see also United States v. Kukafka*, 478 F.3d 531 (3d Cir. 2007) (upholding "Deadbeat Parents Act" where the statute contains an explicit jurisdictional element limiting its reach to only interstate activity).

Here, § 231(a)(3) is distinguishable from the statutes that the Supreme Court struck down in *Lopez* and *Morrison.*[3] The jurisdictional element of § 231(a)(3) limits the prohibited conduct to instances invoking interstate commerce. "It does not encompass all instances where a person interferes with law enforcement." *Pugh*, No. 1:20-CR-73-TFM, at *10. Rather, there must first be a civil disorder that affects commerce, as defined by § 232(2) where law enforcement is engaged in the lawful performance of its duties incident to, or during, the civil disorder.[4] Then the

---

[2] This Court agrees with *Pugh* that decisions of other circuits are instructive. For example, the Sixth Circuit stated, "[i]ndeed, we regard the presence of such a jurisdictional element as the touchstone of valid congressional use of its Commerce Clause powers to regulate non-commercial activity. *United States v. Coleman*, 675 F.3d 615, 620 (6th Cir. 2012) (upholding the Sex Offender Registration and Notification Act)). The Fourth Circuit additionally noted that "Congress may regulate violent conduct interfering with interstate commerce even when the conduct itself has a 'minimal' effect on such commerce." *United States v. Hill*, 927 F.3d 188, 199 (4th Cir. 2019) (internal citations omitted).

[3] The statute struck down in *Lopez* was later reenacted with an explicit jurisdictional hook that cured its initial constitutional deficiencies. *See* 18 U.S.C. § 922(q)(2)(A) ("It shall be unlawful for any individual knowingly to possess a firearm that has *moved in or that otherwise affects interstate or foreign commerce* at a place that the individual knows, or has reasonable cause to believe, is a school zone." (emphasis added)).

[4] Defendant argues that the jurisdictional element is insufficient because its language requires that "the civil disorder, not the individual's act, minimally affect[s] commerce."

10

defendant must commit or attempt to commit an act to obstruct, impede or interfere with the performance of those duties. Defendant has failed to cite any case in which a statute with an explicit jurisdictional hook was invalidated based on the Commerce Clause, nor has this Court found one in its own independent research. Therefore, his challenge to § 231(a)(3) as exceeding Congress's Commerce Clause powers fails.

To the extent Defendant makes a factual challenge as to whether the conduct at issue is sufficient to have had a substantial effect on interstate commerce, this Court will not decide that on a motion to dismiss. Defendant may raise this issue at trial should a question remain as to whether the United States has proved that the alleged activities establish the requisite nexus to commerce.

### 2. First Amendment

Defendant next argues that § 231(a)(3) violates the First Amendment in two ways. (D.I. 25 at 27). First, Defendant asserts that it is a "substantially overbroad regulation of protected expression because it imposes steep criminal penalties on an expansive range of speech and expressive conduct." (*Id.*). Second, Defendant argues that it was "enacted for the express legislative purpose of suppressing the content of messages favoring civil rights advocacy, and the statute's content-based text and purpose fail strict scrutiny." (*Id.* at 27-28).

#### a. Whether § 231(a)(3) is Overbroad

"Invalidation for overbreadth is . . . not to be casually employed." *United States v. Williams*, 553 U.S. 285, 293 (2008) (internal quotations and citation omitted). Nonetheless, statutes that "prohibit[] a substantial amount of protected speech" may be overbroad. *Id.* at 292.

---

(D.I. 25 at 23). In doing so, Defendant overlooks that the acts the statute prohibits are components of the overall civil disorder. The statute does not purport to criminalize acts that are not inherently involved in the civil disorder itself.

11

"Overbreadth attacks have . . . been allowed where the [Supreme] Court thought rights of association were ensnared in statutes which, by their broad sweep, might result in burdening innocent associations." *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973). An otherwise constitutional statute "may nevertheless be 'overbroad' if in its reach it prohibits constitutionally protected conduct." *Grayned v. City of Rockford*, 408 U.S. 104, 114 (1972).

A court's first task in a facial challenge to the overbreadth of a statute is to determine whether it reaches a "substantial amount of constitutionally protected conduct." *City of Houston v. Hill*, 482 U.S. 451, 458 (1987) (internal citations omitted). "Rarely, if ever, will an overbreadth challenge succeed against a law or regulation that is not specifically addressed to speech or to conduct necessarily associated with speech." *Virginia v. Hicks*, 539 U.S. 113, 124 (2003).

This Court agrees with the *Pugh* court that "18 U.S.C. § 231(a)(3) is not a specific statute regulating speech, but rather applies to conduct." *Pugh*, No. 1:20-CR-73-TFM, at *12. The statute applies to conduct amid a civil disorder, not all conduct. As the Eighth Circuit has stated, "[t]he short answer to defendant's contention that the statute prohibits protected speech is that, as we read it, § 231(a)(3) has no application to speech, but applies only to violent physical acts." *United States v. Mechanic*, 454 F.2d 849, 852 (8th Cir. 1971).

This Court agrees with *Mechanic* that § 231(a)(3) applies to conduct, not speech. *See also Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 65-66 (2006) ("[W]e reject[] the view that conduct can be labeled speech whenever the person engaging in the conduct intends thereby to express an idea." (internal quotations omitted)). Given that the language of the statute states "any act to obstruct, impede, or interfere," however, this Court does not agree that § 231(a)(3) applies only to "violent physical acts." The act need only be one that obstructs, impedes, or interferes with law enforcement engaged in the performance of duties incident to, and

12

during a civil disorder. Although it may be likely that violent conduct will be at issue with a defendant charged under the statute, it is possible for nonviolent acts to also fall within the statute's prohibition. This Court, therefore, agrees with the *Pugh* court in construing "the statute more broadly to include exactly what it says: 'any act.'" *Pugh*, No. 1:20-CR-73-TFM, at *13.

"Subject to . . . reasonable regulation . . . peaceful demonstrations in public places are protected by the First Amendment. Of course, where demonstrations turn violent, they lose their protected quality as expression under the First Amendment." *Grayned*, 408 U.S. at 116. Section 231(a)(3) prohibits only certain conduct, *i.e.* conduct that obstructs, impedes, or interferes with law enforcement and conduct that occurs during a civil disorder, which is defined, in part, as "any public disturbance involving acts of violence." 18 U.S.C. § 232(1). Any such conduct that is violent would not be protected expression under the First Amendment. Any such conduct prohibited by the statute that is nonviolent would likely not be protected either given that the conduct is a component of the overall "civil disorder."

On a facial challenge, Defendant must show that the statute reaches a "*substantial* amount of constitutionally protected conduct." *City of Houston*, 482 U.S. at 458 (emphasis added). Defendant proffers various hypotheticals of seemingly innocent behavior which could be prosecuted under the statute. The Supreme Court, however, has made clear that "[t]he mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." *Members of City Council of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984); *see also United States v. Hoffman*, 334 F. Supp. 504, 509 (D.D.C. 1971) (rejecting First Amendment challenge to § 231(a)(3) where defendant set forth examples of hypothetical situations which defendant contended would result in unconstitutional

13

applications of the statute). Nothing in § 231(a)(3) prohibits peaceful expression or association, therefore, this Court declines to find the statute to be overbroad.

### b. Whether § 231(a)(3) is Content Based

Defendant argues that § 231(a)(3) regulates the content of protected expression without a permissible justification. "[A]bove all else, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Police Dep't of Chicago v. Mosley*, 408 U.S. 92, 95 (1972). "Content-based laws – those that target speech based on its communicative content – are [subject to strict scrutiny]." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015).

A court must first consider whether the regulation of speech, on its face, "draws distinctions based on the message a speaker conveys." *Id.* at 163. The Supreme Court has "also recognized a separate and additional category of laws that, though facially content neutral, will be considered content-based regulations of speech: laws that cannot be 'justified without reference to the content of the regulated speech,' or that were adopted by the government 'because of disagreement with the message [the speech] conveys.'" *Id.* at 164 (citing *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)). "A law that is content based on its face is subject to strict scrutiny regardless of the government's benign motive, content-neutral justification, or lack of animus toward the ideas contained in the regulated speech." *Id.* at 166 (internal quotations and citation omitted)).

Here, § 231 is content-neutral on its face. Consequently, this Court must look to the second part of the test outlined in *Reed*, *i.e.*, whether the regulation was enacted for the suppression of free expression. Defendant devotes extensive discussion to Senator Russell B. Long of Louisiana. This Court does not find this evidence sufficient to deem the statute a content-based regulation of speech. This Court agrees with *Pugh* that "the negative intentions of a single senator cannot be

14

imputed to all proponents of the bill." *Pugh*, No. 1:20-CR-73-TFM, at *15. Moreover, as *Pugh* noted, Senator Long ultimately voted against the bill. *Id.*

"The principal inquiry in determining content neutrality . . . is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." *Ward*, 491 U.S. at 791. This Court finds that § 231(a)(3) does not prohibit speech based on its content and thus is not a content-based regulation of speech. Indeed, that the statute has been utilized in prosecutions in a variety of contexts undermines the Defendant's assertion that it is a content-based regulation of speech. Consequently, strict scrutiny does not apply, and the statute does not violate the First Amendment.[5]

### 3. Fifth Amendment Due Process

Defendant asserts that § 231(a)(3) is unconstitutionally vague in violation of the Due Process Clause of the Fifth Amendment. (D.I. 25 at 37). "No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes." *Lanzetta v. New Jersey*, 306 U.S. 451, 453 (1939). "It is established that a law fails to meet the requirements of the Due Process Clause if it is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits . . . ." *Giacco v. Pennsylvania*, 382 U.S. 399, 402 (1966). "Vagueness may invalidate a criminal law for either of two independent reasons. First, it may fail to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits; second, it may authorize and even encourage arbitrary and discriminatory enforcement." *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999) (citing *Kolender v. Lawson*, 461 U.S. 352, 357 (1983)). A criminal statute "need only give 'fair warning' that certain conduct is prohibited." *San Filippo v. Bongiovanni*, 961 F.2d 1125, 1136 (3d Cir. 1992) (quoting *Colten v. Kentucky*, 407 U.S. 104, 110 (1972)).

---

[5] Defendant does not argue that the statute is unconstitutional if strict scrutiny does not apply.

The court must consider "whether a statute is vague as applied to the particular facts at issue, for '[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.'" *Holder v. Humanitarian L. Project*, 561 U.S. 1, 18-19 (2010) (quoting *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1982)). Moreover, void-for-vagueness challenges are separate and distinct from overbreadth challenges. *See Id.* at 20.

Defendant does not have standing to bring a facial vagueness challenge. To do so, Defendant would first have to demonstrate that § 231(a)(3) is vague as applied to *his conduct* before raising a facial vagueness challenge. He fails to do so. Consequently, the motion to dismiss on this basis is denied.

    **C.**     <u>**Sufficiency of the Indictment**</u>

"In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation . . . ." U.S. CONST. AMEND. VI. An Indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged" and include the "provision of law that the defendant is alleged to have violated." FED. R. CRIM. P. 7(c)(1).

An indictment is sufficient if it "(1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution." *United States v. Kemp*, 500 F.3d 257, 280 (3d Cir. 2007) (quoting *United States v. Vitillo*, 490 F.3d 314 (3d Cir. 2007)). "[N]o greater specificity than the statutory language is required so long as there is sufficient factual orientation to permit the defendant to prepare his defense and to invoke double jeopardy in the event of a subsequent

16

prosecution." *United States v. Rankin*, 870 F.2d 109, 112 (3d Cir. 1989) (internal citations omitted).

"It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished.'" *Hamling v. United States*, 418 U.S. 87, 117 (1974) (quoting *United States v. Carll*, 105 U.S. 611, 612 (1882)). "The test is not whether the indictment could have been framed in a more satisfactory manner but whether it conforms to the minimal constitutional standards." *United States v. Olatunji*, 872 F.2d 1161, 1168 (3d Cir. 1989) (internal quotations and citation omitted). An indictment that tracks the language of the statute and is supplemented by specific allegations of the activity giving rise to the charge is sufficient. *See id.*

As noted above, the Indictment against Defendant stated:

> On or about May 30, 2020, in the District of Delaware, the defendant, ADRIAN WOOD, did knowingly commit an act to obstruct, impede, and interfere with a law enforcement officer lawfully engaged in the lawful performance of the officer's official duties incident to and during the commission of a civil disorder, which obstructed, delayed, and adversely affected commerce and the movement of articles or commodities in commerce, namely: the defendant, ADRIAN WOOD, incident to and during the commission of a civil disorder, knowingly and willfully caused damage to a police officer's police vehicle by throwing a hard projectile through the back window of the vehicle while the police officer was engaged in the lawful performance of official duties. In violation of 18 U.S.C. § 231(a)(3).

(D.I. 13). Although the Indictment is not detailed, it complies with Rule 7(c)(1). The Indictment largely tracks the language of the statute and is supplemented by specific allegations of the activity that gave rise to the charge. *See Olatunji*, 872 F.2d at 1168. For example, it includes the date and location of the offense and specifies that Defendant "caused damage to a police officer's police vehicle by throwing a hard projectile through the back window of the vehicle while the police

officer was engaged in the lawful performance of official duties." This is sufficient to inform Defendant of the nature of the facts and circumstances surrounding the offense with which he was charged. Thus, upon receiving the Indictment, Defendant was apprised of what he must be prepared to defend and capable of determining to what extent he could invoke double jeopardy. As such, the Indictment passes constitutional muster.

Although, the Court finds the Indictment to be sufficient to survive dismissal, it will address other points raised by Defendant in his motion to dismiss. First, Defendant accuses the United States of mass-producing indictments with identical language except for the names and dates of the offenses, none of which involve "specificity regarding the acts or circumstances other than conclusory allegations." (D.I. 25 at 42). This, however, fails to recognize that the Indictment against Defendant, clearly stated the acts *and* circumstances for which Defendant was charged, i.e., Defendant threw a "hard projectile through the back window of the [police] vehicle while the police officer was engaged in the lawful performance of official duties." (D.I. 13).[6] Consequently, this Court fails to see the merit in Defendant taking issue with the Indictment containing "conclusory allegations." (D.I. 25 at 42).

Next, Defendant attacks the Indictment claiming that it fails both the notice and presentment requirements of the Fifth and Sixth Amendments. (*Id.* at 43). Both arguments are without merit. Defendant claims that the "indictment's only deviation from duplicating the exact statutory language of § 231(a)(3) are the addition of 'violent' to describe the act and charged mental states of 'knowingly' and 'for the intended purpose.'" (*Id.*). This Court has reviewed the

---

[6] Moreover, "[a] ruling on a motion to dismiss is not . . . 'a permissible vehicle for addressing the sufficiency of the government's evidence.'" *United States v. Bergin*, 650 F.3d 257, 265 (3d Cir. 2011) (quoting *United States v. DeLaurentis*, 230 F.3d 659, 660-61 (3d Cir. 2000)).

language of the Indictment closely, and notes that the word "violent" does not appear anywhere in the document.[7] Furthermore, as this Court indicated previously, the Indictment includes more than just the statutory language. It includes information on the conduct, specific to Defendant, which gave rise to the United States charging him with a violation of § 231(a)(3), giving Defendant appropriate notice. The Indictment, therefore, is sufficient and the motion is denied.

### V.     CONCLUSION

THEREFORE, for the reasons articulated above, IT IS HEREBY ORDERED that Defendant's *Motion to Dismiss for Selective Prosecution* (D.I. 22) and Defendant's *Motion to Dismiss Indictment* (D.I. 25) are **DENIED**.

---

[7]     The argument in Defendant's motion seems to be tailored to the indictment filed against the defendant in *Pugh*.

19