IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Criminal Action No. 20-56-MN |
| | : | |
| ADRIAN WOOD, | : | |
| | : | |
| Defendant. | : | |

## DEFENDANT'S SENTENCING MEMORANDUM

Adrian Wood is a 23 year-old young man who comes before this Court having pled guilty to civil disorder, accepting responsibility for his crime. The Court ordered his pretrial release on June 15, 2020 at his initial appearance, and he was finally released from state custody on July 7, 2020 after serving 35 days in jail. He has abided by all the rules of his pretrial supervision for the past 17 months. Mr. Wood's remorse is deeply felt and his desire and intention to meet his $400 restitution obligations are real. *See* Ex. A, Adrian Wood letter.

At the end of May 2020, the country was gripped by the horror of George Floyd's murder by the police in Minneapolis, Minnesota. One officer murdered him slowly and agonizingly, while three other officers literally stood by and watched. Then, the entire country watched. People took their righteous outrage and pain to the streets. Mr. Wood was one of them.

Mr. Wood committed this offense during a protest in Wilmington. It was a time of true local and nationwide pain and upheaval. Mr. Wood deeply regrets throwing the brick and that he let himself become carried away in the heat of the moment. He knew immediately that he had made a huge mistake. He was just 21 years-old at the time and had never before (or since)

been in trouble with the law. He was very scared, but nevertheless turned himself into the Wilmington police department and made a very tearful confession. Mr. Wood has pled guilty to a felony offense and this conviction will be part of his record for the rest of his life. It will impact his life every time he applies for a job, for example. He also spent over one month in state custody following his arrest on the conduct for which he has pled guilty in federal court.

Mr. Wood's personal characteristics and history and his full acceptance of responsibility for his crime will demonstrate why a time served sentence with one year of probation is a sentence sufficient, but not greater than necessary, to achieve the sentencing purposes set forth in 18 U.S.C. § 3553(a).

I. **Adrian Wood's History and Characteristics Warrant a Downward Variance and Support a Sentence Below the Advisory Guideline Range.**

Adrian Wood grew up in Washington. Adrian's mother, Kassandra, had him when she was very young, and the two of them have always been very close. Kassandra was able to put herself through college with baby Adrian in tow. She eventually married a man, Adrian's stepfather, and had Adrian's brother together. That man became extremely physically abusive of Kassandra, Adrian, and Adrian's brother.

Adrian lived his childhood years in fear of his stepfather. He feared doing anything to set him off. He was watchful and quiet and had no control over the explosiveness. His mother was trapped, financially dependent and physically isolated. Eventually, Kassandra was able to pick up and leave Washington with her two boys in order to put as many miles as possible between her and her husband. Kassandra reported to counsel that she has never had any trouble with either of her sons despite all that they went through. They were close-knit and tried to help each other survive their common abuser.

Although Adrian never posed any disciplinary problems, he has long struggled with anxiety, depression, and PTSD following chronic childhood abuse by multiple abusers. *See* PSR ¶¶ 49-52, 59-62. Once his mother became aware, she arranged for counseling. Adrian saw a therapist starting around age five or six through age sixteen. Kassandra said that Adrian is sensitive and has always expressed his individualism with his outward appearance and in his extracurricular interests but has never been a defiant type. His therapist confirms that Adrian has never been known to cause anyone any harm and that his actions in this case are far out of step with his usual character. *See* Ex. B, Wagner letter. Mr. Wood continues to suffer from poor mental health and hopes to be able to return to counseling.

Part of the reason for Adrian's compliant behavior and accomplishments as an adolescent are attributable to his family's culture. His is a military family. His grandfather, grandmother, great grandfather, uncles, and other extended family have all served in the military. Adrian, too, participated in ROTC throughout high school. After he graduated, his mother moved him and his brother across the country. Adrian worked at a few jobs, including retail work and cleaning commercial kitchens, but wanted more purposeful direction. He decided to join the Army. He picked the infantry because he thought he might want to join the special forces. However, he struggled with illness during basic training and became disillusioned. He left with a general discharge.

Adrian returned to Delaware to live with his mother and brother. His previous employer rehired him, which he held until he was laid off due to the COVID-19 pandemic. He is interested in pursuing college for computers and music, and he is also interested in pursuing a trade craft such as welding. He currently works full time in retail.

Mr. Wood understands that he faces the possibility of spending more time in custody. However, in light of his exemplary conduct while on pre-trial release and the other details of his personal history and characteristics, a sentence of probation is appropriate and reasonable in this case.

**II.     A Probationary Sentence—a Moderate Variance Below the Zone B Sentencing Guideline Range—Satisfies the Sentencing Factors Articulated in 18 U.S.C. § 3553(a)(2).**

   **A.  Retribution**

Retribution is "the interest in seeing that the offender gets his 'just deserts.'"  *Atkins v. Virginia*, 536 U.S. 304, 318 (2002).  Accordingly, "the severity of the appropriate punishment necessarily depends on the culpability of the offender."  *Id*.  When it enacted § 3553, the Legislature defined retribution more broadly than the Supreme Court to also include "from the public's standpoint. . . the harm done or threatened by the offense."  (3258).  Notably, in 1995, the U.S. Sentencing Commission undertook an empirical study to attempt to determine "the public's standpoint" with respect to the appropriate punishment for different offenses.  *Public Opinion on Sentencing Federal Crimes*, U.S. Sentencing Commission, at 1 (Oct. 1995).  While there was a lot of ambiguity in the results, one thing that did clearly emerge was a "fairly strong consensus [with respect to] the seriousness ordering of crimes, with those involving actual or threatened physical harm to victims generally considered to be the most serious."  *Id*. at 11.

The advisory guideline range in Mr. Wood's case is greater than necessary to satisfy the retributive goal of sentencing.  Mr. Wood was one of many people in Wilmington's protests after George Floyd's murder against police brutality whose behavior turned criminal.  It was an extraordinary moment in the country.

Mr. Wood understood immediately that his action violated the law, and he takes

responsibility. He was immediately remorseful and has turned his shame and regret inward. The conviction itself serves to punish, as it represents his first conviction—and a felony, at that—which comes with collateral consequences. Moreover, being under the Court's continued supervision will serve to punish his, as his movements and behavior will be strictly monitored while he is on supervised release. As noted by the Supreme Court in *Gall v. United States*, 128 S.Ct. 586, 595-96 (2007), a non-custodial sentence comes with heavy restrictions:

> We recognize that custodial sentences are qualitatively more severe than probationary sentences of equivalent terms. Offenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty. Probationers may not leave the judicial district, move, or change jobs without notifying, and in some cases receiving permission from, their probation officer or the court. They must report regularly to their probation officer, permit unannounced visits to their homes, refrain from associating with any person convicted of a felony, and refrain from excessive drinking. Most probationers are also subject to individual 'special conditions' imposed by the court.

A sentence of additional incarceration is not needed to punish Mr. Wood, as the requested sentence represents a significant punishment to someone like Mr. Wood who has no prior convictions and has never previously served a period of incarceration prior to his arrest on this case.

      **B. Deterrence**

Mr. Wood is well aware of the seriousness of his conduct. Given his remorse and that he has proved that he can succeed on supervision, providing additional deterrence is not a significant concern. In light of Mr. Wood's record before this incident and while on pretrial supervision, his deep regret about this case, and his fear and anxiety about the consequences of his actions, there is every reason to believe that Mr. Wood will not reoffend.

A time-served sentence and the fact of a felony conviction and its collateral consequences

also provide valuable general deterrence. He will serve a period of federal supervised release, which is punishment with significant restrictions on liberty. *See Gall*, 128 S.Ct. at 595-96.

Mr. Wood's advisory guideline range falls within Zone B of the United States Sentencing Guidelines table. The guidelines advise that a Zone B guideline sentence allows for probation to be substituted for imprisonment where the probation terms include a condition of home detention. *See* USSG § 5B1.1 and 5C1.1. Thus, even without the downward variance that is warranted for Mr. Wood, the guidelines provide that a period of probation with home detention can satisfy a guideline sentence.

### C. Protection of the Public

There is no credible argument that incapacitation is a relevant goal of sentencing in this case. Mr. Wood has no prior convictions.

While acknowledging the seriousness of Mr. Wood's offense, a sentence of probation is sufficient, but not greater than necessary, when considering Mr. Wood's personal history, his lack of criminal history, his conduct on pretrial supervision, and his acceptance of responsibility in this case.

Mr. Wood has been on pre-trial release in this case since June 2020. During this time, he has gone to work, paid rent with his mother, worked with counsel, and has not engaged in any criminal conduct, demonstrating that he is amenable to supervision and does not need an additional period of incarceration. In addition, Mr. Wood's conduct while on pre-trial release firmly demonstrates that he does not presently pose a danger to the public and that incarceration is not needed to deter him from future criminal conduct.

### III. <u>Conclusion</u>

This was a serious offense during extremely unusual conditions. Mr. Wood has demonstrated that he is amenable to supervision and he poses no threat to the public. He served 35 days in custody and has been under federal pretrial supervision for over 17 months. A sentence of additional incarceration is not needed to protect the public or to deter Mr. Wood from committing any offenses in the future. Given the foregoing, the defense respectfully submits that a sentence of time-served and one year of probation is reasonable and warranted.

        Respectfully submitted,

        ELENI KOUSOULIS
        Acting Federal Public Defender

Dated: <u>December 9, 2021</u>        <u>/s/ Janet Bateman</u>
        JANET BATEMAN
        Assistant Federal Public Defender
        District of Delaware
        800 King Street, Suite 200
        Wilmington, DE   19801
        302-573-6010
        de_ecf@fd.org

        Attorney for Adrian Wood