

**U.S. Department of Justice**

*United States Attorney's Office*
*District of Delaware*

---

*The Hercules Building*
*1313 North Market Street*            *(302) 573-6277*
*P.O. Box 2046*                       *FAX (302) 573-6220*
*Wilmington, Delaware 19899-2046*

December 13, 2021

**VIA ECF**

The Honorable Maryellen Noreika
United States District Judge
District of Delaware
J. Caleb Boggs Federal Building
844 N. King Street
Wilmington, DE 19801

      Re:    **United States v. Adrian Wood**
              **Criminal Action No. 20-CR-56-MN**

Dear Judge Noreika:

      On December 22, 2021, this Court will sentence Defendant Adrian Wood for obstructing or interfering with law enforcement during a civil disorder, in violation of 18 U.S.C. § 231(a)(3). In light of Defendant's criminal history, the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") range for this offense is 8 to 14 months of imprisonment. *See* December 2, 2021 Presentence Investigation Report ("PSR") ¶79. As explained in more detail below, the Court should impose a sentence requiring four months of residence at a Residential Reentry Center ("RRC"), four months four of home detention, and two years of supervised release.[1] As part of supervised release, Defendant should be required to participate in mental health treatment, as well as spend 400 hours doing community service. Such a sentence appropriately balances the § 3553 factors and is sufficient but not greater than necessary to achieve the purposes of sentencing. 18 U.S.C. § 3553(a).[2]

---

[1] As noted in the PSR, Defendant's conduct falls within Zone B of the Guidelines Sentencing Table. *See* PSR ¶ 90. As a result, the Court has the discretion to include a period of home confinement in lieu of incarceration as part of Defendant's sentence. *See* U.S.S.G. § 5C1.1(e); § 5B1.1(a)(2).

[2] As it does in every case, the Government has filed an Attachment A under seal along with this Sentencing Letter.

### A. The Offense Conduct

Defendant was arrested in June 2020 after he threw a brick through the back windshield of an occupied Wilmington Police Department ("WPD") patrol vehicle. PSR ¶¶ 14-26. On any ordinary day, that conduct would be serious and warrant punishment. The Defendant, however, did not commit this crime on any ordinary day. During a period of intense upheaval, Defendant decided not only to participate in the chaos; he decided to lead the charge.

On the day of the planned protest in Wilmington, WPD Sergeant Rich Evans had been assigned to monitor the protest from his vehicle. Although Sergeant Evans's duty was to protect civilians and businesses, he was also monitoring the protests to ensure the safety of protesters. And for good reason. As the protesters continued their march, the scene became more and more volatile. Sergeant Evans observed juveniles assaulting civilians as they marched along the protest route. Some protesters threw rocks at cars passing by. Some shut down I-95. Still others ransacked a CVS and assaulted a store employee, causing the store to close. The situation was a powder keg.

Sergeant Evans noticed Defendant Wood before he threw the brick. He was marching toward the front of the group and appeared to be encouraging others to join in the chaos. Up until Wood threw the brick, the protesters were mostly non-confrontational with Sergeant Evans. After Wood busted out the windshield, however, others in the crowd followed his lead. Sergeant Evans was forced to abandon his duties and peel away from the crowd for his own safety and to avoid any further escalation. In other words, Wood's assault on the officer ratcheted up the potential for violence and made an already tense situation even worse.

Defendant claims that he "let himself become carried away in the heat of the moment" and "knew immediately that he had made a huge mistake." Def. Sent. Mem. at 1. But if Defendant had a momentary lapse in judgment, he had an odd way of showing it. Not only did he continue in the protest, he went home, showered, changed clothes, and grabbed his lock-picking kit. He also grabbed a backpack full of fireworks and matches, along with a six-inch knife. Those are not the actions of a remorseful person; he went back to the protests looking for trouble. Relatedly, although Defendant did make a "teary confession" during his interview, he also lied to the FBI repeatedly.

The bottom line is that Defendant's conduct was serious and dangerous. A within-Guidelines sentence would account for the severity of Defendant's conduct, as well as serve the retributive goal of sentencing.

### B. Deterrence Value

Defendant submits that specific deterrence should be not a significant factor in fashioning an appropriate sentence for him. Perhaps that is true. But given Defendant's impulsive conduct on the day of the protest, there is no way for the Court to be certain that Defendant has fully overcome the issues that led to his conduct that day and is not likely to engage in similar conduct going forward. Similarly, even if this Court were convinced that Defendant is not likely to recidivate, general deterrence is an important factor for the Court's consideration. And in this regard, imposing a within-Guidelines sentence would send a strong message to the community: you cannot engage in an unprovoked attack on law enforcement and receive a slap on the wrist.

Even if Defendant did not violently attack civilians or destroy businesses himself, his conduct led to a set of conditions that caused significant harm in the community. The protests were more than alarming and should not be taken lightly. Casual participation in a civil disorder is still participation in a civil disorder. Accordingly, Defendant should be required to spend 400 hours in service to the community damaged by his conduct.

### C. The Defendant's Personal History and Characteristics

The history of abuse visited upon Defendant by his stepfather is heinous. No child should have to endure such trauma. And to his credit, despite such a tumultuous upbringing, Defendant has proven himself amenable to supervision. That is exactly why a within-Guidelines sentence of four months at the RRC, four months of home confinement, and two years of supervised release is appropriate in this case. Even assuming Defendant got carried away the day of the protests, such impulsiveness and susceptibility militate in favor of a significant period of structure, as free as possible from any potential negative influences or destabilizing stressors. The step-down approach outlined by the government would provide such a structured environment. Mental health treatment would also allow Defendant an opportunity to deal with any lingering issues stemming from his history of abuse.

### D. Conclusion

Defendant rightly emphasizes that his conduct occurred during a highly-charged atmosphere. But even during such unique circumstances, Defendant deserves to answer for his actions. Spending 4 months in the RRC, 4 months in home confinement, and 2 years of supervised release appropriately balances the § 3553(a) factors and is sufficient but not greater than necessary to achieve the goals of

sentencing. In order to set Defendant up to succeed, his supervised release should involve mental health treatment. Defendant should also be required to spend 400 hours in service to the community that his conduct harmed.

                                              Respectfully submitted,

                                              DAVID C. WEISS
                                              United States Attorney

                                        BY: */s/ Christopher R. Howland*
                                              Christopher R. Howland
                                              Assistant United States Attorney

cc:    Janet Bateman, Esquire (via ECF)